```
                UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - X

UNITED STATES OF AMERICA,      : 11-CR-303(NGG)
                               :
                               :
                               :
        -against-             : United States Courthouse
                              : Brooklyn, New York
                              :
                              :
                              : Friday, July 18, 2014
GERALDO ELAINOR,              :
                              :
           Defendant.         :
                              :

- - - - - - - - - - - - - X
```

TRANSCRIPT OF CRIMINAL CAUSE FOR SENTENCING
BEFORE THE HONORABLE NICHOLAS G. GARAUFIS
UNITED STATES DISTRICT COURT JUDGE

A P P E A R A N C E S:

For the Government: LORETTA E. LYNCH, ESQ.
                    United States Attorney
                    Eastern District of New York
                       271 Cadman Plaza East
                       Brooklyn, New York 11201
                    BY:  MARGARET LEE, ESQ.
                         KRISTIN MACE, ESQ.
                         Assistant United States Attorney

For the Defendant:    JAMES M. BRADEN, ESQ.
                       551 Fifth Avenue
                       New York, New York  10176
                      BY:JAMES M. BRADEN, ESQ.


Court Reporter:  Richard W. Barry, RPR
                 Official Court Reporter
                 E-mail: rwbarrycourtreporter@gmail.com

        Proceedings recorded by computerized stenography.
        Transcript produced by Computer-aided Transcription.

1        COURTROOM DEPUTY:  Criminal cause for sentencing.

2        MS. MACE:  Afternoon Your Honor, Kristine Mace and

3   Maggie Lee for the United States.

4        MR. BRANDEN:  Jim Branden for the defendant, Mr.

5   Elainor.  Afternoon.

6        THE COURT:  Afternoon, Mr. Branden; afternoon, sir.

7        THE DEFENDANT:  Afternoon, sir.

8        THE COURT:  This is a sentencing for Mr. Elainor.

9        Mr. Elainor are you satisfied with the assistance

10  that your attorney has given you thus far in this matter?

11       THE DEFENDANT:  Yes, sir.

12       THE COURT:  I have the following materials that are

13  part of the-- that I have reviewed in connection with the

14  sentencing.  They constitutes the sentencing file.

15       There is a presentence investigation report that was

16  prepared June 19th, 2014, and an addendum to the report that

17  was transmitted to the Court on July 17th, addressing Mr.

18  Branden's objections to the presentence report in his letter

19  dated --

20       MR. BRANDEN:  July 15th was my letter, Judge.

21       THE COURT:  July 15th, 2014.

22       Mr. Branden, have you shared the presentence report

23  with your client?

24       MR. BRANDEN:  Yes, I have.

25       THE COURT:  Is he aware of the addendum as well?

1        MR. BRANDEN:  He is aware of it.

2        MS. MACE:  There is a letter from the government,

3   Your Honor.

4        THE COURT:  I'm getting there.  I am not there yet.

5   Don't jump the gun on this.

6        There is a-- you have seen the presentence report

7   and the addendum, correct?

8        MS. MACE:  Yes, Judge, yes.

9        THE COURT:  And also, there is a letter from the

10  government dated July 15th, 2014.

11        Have you seen that, Mr. Branden?

12        MR. BRANDEN:  Yes, Judge.

13        THE COURT:  And, is your client aware of that?

14        MR. BRANDEN:  I have not read this to him, but he is

15  now aware of it and he can read, what I believe to be the most

16  relevant part, which is the only new information contained in

17  this, which is this paragraph which I will show him right now.

18        THE COURT:  Okay.

19        (Pause.)

20        MR. BRANDEN:  He has reviewed that, Judge, thank

21  you.

22        THE COURT:  Thank you.

23        I think that covers it.  That is-- nothing else is

24  there.

25        MS. MACE:  The only other thing relevant to

1  sentencing which is the plea agreement, which we did send a

2  copy to the Court.

3            THE COURT:  I have that.  I wasn't there.

4            MS. MACE:  You were, since it was a 11(c)(1)(C)

5  plea, it is particularly relevant to sentencing.

6            THE COURT:  Yes.  I'm well aware of it.  I think I

7  even said at the time that the Court was agreeable to

8  accepting a 11(c)(1)(C) plea.

9            MS. MACE:  Thank you.

10            THE COURT:  A 11(c)(1)(C) plea is a plea to a

11  designated agreed to term of imprisonment; is that right?

12            MS. MACE:  Yes.

13            THE COURT:  In this case, the term of imprisonment

14  that has been agreed to for the two crimes Counts 1 and 7, is

15  300 months in the custody of the Attorney General; is that

16  correct?

17            MS. MACE:  Yes.

18            MR. BRANDEN:  That's correct.

19            THE COURT:  We are going to go through the process

20  obviously of ascertaining the guideline and so forth, as I am

21  required to do by case law.  All right.

22            MR. BRANDEN:  Judge, I have never appeared on a

23  11(c)(1)(C) sentencing before.  I know that I raised various

24  issues with regard to the guidelines.

25            THE COURT:  Yes.

1       MR. BRANDEN:  There are two I think that would

2  really matter if this were not a 11(c)(1)(C).

3       THE COURT:  Let's talk about them anyway.

4       MR. BRANDEN:  Okay.

5       THE COURT:  Go ahead.

6       MR. BRANDEN:  The first is whether or not the base

7  offense level should be 43 as set forth in paragraph 25 of the

8  presentence report, or whether it should be level 38

9  corresponding to second degree murder.  The facts in the case

10  are not that Mr. Elainor always sought to kill Anthony Thomas.

11  The event of that evening came up very very quickly, Anthony

12  Thomas passed through the Ebbets Field turf so to speak over

13  the Six Tre group and after many drinks from the defendant, on

14  a very fast decision he decided to shoot.

15       So to me having had this come up in other

16  circumstances, usually it is my experience that that is a

17  second degree murder, not a first degree murder.  That is the

18  basis of the objection.

19       I have nothing more to add, other than what I have

20  just told you.  I think you can make a legal determination.

21       THE COURT:  From the government?

22       MS. MACE:  In the addendum to the presentence

23  report, the Probation Department did comment on this one and

24  set forth the reasons that the Probation Department believes

25  it is appropriate to categorize this as first degree murder

1  and the government joins in that reasoning.

2          We believe that this was premeditated.  It was not

3  maybe lengthy meditation before the killing.  It is sufficient

4  to meet the legal requirement.

5          So, for those reasons and the reasons laid out in

6  more detail in the addendum to the presentence report, I think

7  the calculation in the PSR is correct.

8          THE COURT:  All right.  I am going to agree with the

9  Probation Department that the base offense level 43 is the

10  appropriate offense level under the circumstances.

11          Now, next?

12          MR. BRANDEN:  Next concerns the defendant's criminal

13  history category.

14          THE COURT:  Yes.

15          MR. BRANDEN:  It is submitted that Mr. Elainor

16  having been jumped into the Six Tre Folk Nation group when he

17  was 15 years old, was always a member of that group throughout

18  his criminal history.

19          So that the two prior robberies that he got-- that

20  he has been convicted of when he was 18 years old, those

21  should be deemed part of the instant offense, and were that

22  so, he would not be a career offender.

23          THE COURT:  Let me hear from the government.

24          MS. MACE:  Once again, the Probation Department has

25  given its position on this, and I believe they are correct.  I

1  think if what Mr. Branden said were true, then there would be

2  further changes to the guidelines calculation, because then

3  all of that other conduct would be considered relevant conduct

4  and would have to be calculated as well.  I have not done the

5  math to see how that would play out, if it would-- how

6  different it would be.

7          But, the --

8          MR. BRANDEN:  It was a cellphone and $1,000.  So I

9  don't think it would effect it at all.

10         MS. MACE:  Well, I will leave it at that.  I have

11  nothing to add from the analysis from the Probation

12  Department.

13         THE COURT:  Well, I believe I-- I have reviewed this

14  and I believe the PSR is correct.  If you look at the

15  commentary note four to section 2E 1.1 of the sentencing

16  guidelines, it states that prior convictions charged as

17  predicate acts for RICO, maybe included in calculating

18  criminal history.  As such, the defendant's prior convictions

19  which are not mentioned in the indictment should be included

20  in the criminal historical calculation.

21         So, I'm going to follow the Probation Department's

22  recommendation.  Therefore, the defendant has a total offense

23  level of 40.  He has a criminal history category of six

24  because as-- he is a career offender and his guidelines is

25  480 months to life under the guidelines.

1          MS. MACE:  We believe that is correct.

2          THE COURT:  And you object to that?

3          MR. BRANDEN:  Correct.

4          THE COURT:  Your objection is noted.

5          But, it basically doesn't have any effect on the

6    sentence that I'm going to render here, because there is an

7    agreement as to the length of the sentence on the part of the

8    parties, correct?

9          MR. BRANDEN:  Correct.

10          MS. MACE:  Yes.

11          THE COURT:  Now, the defendant is subject to a

12    10-year minimum separate-- a consecutive sentence.

13          MR. BRANDEN:  Correct.  So in order to effectuate

14    what you want to do, you need to put 180 and 120.

15          THE COURT:  Yes, sir.

16          MR. BRANDEN:  If the math is correct.

17          THE COURT:  I think your math is impeccable.

18          MR. BRANDEN:  Thank you, Judge.

19          THE COURT:  So, what I would like to do now is hear

20    from the parties briefly.  I know that the defendant's family

21    is here and I know that this is extremely troubling and

22    serious to the family.  Some of these crimes took place when

23    the defendant was even younger than he is now, much.

24          How old are you now?

25          THE DEFENDANT:  24.

1        THE COURT:  And I'm sure he wishes it hadn't

2   happened the way it happened and what happened, but I need to

3   hear from the parties briefly, as to the appropriateness of

4   the sentence that is being sought by an agreement of the

5   parties.

6        MS. MACE:  Yes, Judge.

7        Also I would like to note at the outset there are

8   members of the victim's family who are here as well.  Several

9   members.

10        THE COURT:  Do they want to speak?

11        MS. MACE:  Yes, and there are three members of his

12   family who wish to speak.  I think each briefly.

13        The victim's father, Matthew Thomas wishes to speak;

14   the victim's sister, Angela Settles would like to speak; and

15   Judith Rodriguez, who shares two children with the victim is

16   here and she-- with her children, and she would like to speak

17   as well.

18        THE COURT:  Why don't we start with --

19        MS. MACE:  Mr. Thomas, the victim's father.

20        THE COURT:  Yes, the victim's father.

21        Would you please come forward, sir.

22        Why you don't you stand next over here next to the

23   government's attorneys.

24        MR. THOMAS:  Afternoon, sir.

25        THE COURT:  Tell me your name.

1       MR. THOMAS:  Matthew Thomas.

2       THE COURT:  What would you like to say?

3       MR. THOMAS:  I am Anthony's father, okay.

4  You know I hear he is getting 25, little quick, you
5  know.

6       Your Honor, I don't think 25 is strong enough all
7  right.  Me myself-- excuse me.

8       MS. MACE:  Take your time.

9       MR. THOMAS:  Still having problems dealing with his
10  loss, okay.  He was no good guy, but he was no bad guy.  He
11  didn't even hang in the neighborhood, okay.  He was on parole
12  all right.  He had asked his parole officers could, you know,
13  cause they-- how do you call that, recommend he be at the
14  house for checkups, you know.  He asked them, could he go down
15  south and, you know, deal with it down there.  Could he move
16  further across town and deal with it.

17       To me I kind of like blame them a little bit for it
18  because he did ask for this.  Okay.  And to top that all off,
19  two days afterwards, they show up at the house, they want a
20  bed check, all right.

21       Young man, why?  Can you answer that question for
22  me.  He was my only son, you know.  His mother passed away.  I
23  can't get no more sons.

24       THE COURT:  Okay.  Thank you, sir.

25       MR. THOMAS:  Thank you.

1       MS. MACE:  Ms. Settles is the victim's sister, she

2  would like to speak.

3            THE COURT:  Ms. Settles.

4            MS. MACE:  She went to the rest room.

5            THE COURT:  Why don't we take the next person.

6            MS. MACE:  Ms. Rodriguez.  As I said, she shares two

7  children with the victim and her children are here as well.

8            THE COURT:  Ms. Rodriguez, please come forward.

9            Yes, ma'am, state your.

10           MR. RODRIGUEZ:  Judith Rodriguez.

11           THE COURT:  Yes, what would you like to say.

12           MR. RODRIGUEZ:  I have two daughters with Anthony

13  Thomas.  To have to explain to children who just seen their

14  father not too long ago, that you will never see your father

15  again, is the worst.  I am currently planning a sweet sixteen

16  and there is no father daughter dance.  My daughter now sees a

17  psychotherapist because she hasn't been able to deal with

18  this.  They constantly ask for their father.  They know what

19  happened, but they were young and to have-- it is a difference

20  between having a parent taken away from a disease, or

21  something natural.  But to have your father taken away just

22  taken is terrible.

23           And my children have to deal with that for the rest

24  of their lives.  They have to go by old pictures, old

25  memories.  I have to remind them about their dad and it is not

1    right.  It is not fair to them, and I'm their voice.

2           I feel the weight, yes, but at the end of the day,

3    it is about my children and they don't have anybody that they

4    can turn to.  They don't have-- they don't have that father

5    figure.  So that is what I really want to say.

6           THE COURT:  I appreciate it.

7           I'm very sorry for your loss.

8           MR. RODRIGUEZ:  Thank you.

9           THE COURT:  And the same is true for Mr. Thomas who

10   spoke already.  Please, I'm very sorry for his loss as well.

11          MR. THOMAS:  Thank you.

12          MS. MACE:  Ms. Settles is Mr. Thomas' sister.

13          THE COURT:  Ms. Settles.

14          Good afternoon, ma'am.

15          MS. SETTLES:  Afternoon.

16          THE COURT:  Please state your full name.

17          MS. SETTLES:  Angela Settles.

18          THE COURT:  Yes, ma'am, what would you like to say.

19          MS. SETTLES:  I would like to say that this is

20   horrible.  It has really impacted my family tremendously.

21          The loss is undescribable, and it is not fair that

22   this young man will be able to have possibilities where my

23   brother has none any more.  All of those are gone, all of

24   them.  Your family has the luxury, they get phone calls,

25   visits, you can get an education.  You can get married.  You

1    can have children.  Those are no longer an option for Anthony.

2             I will never have another niece, a nephew, I will

3    not see my brother marry.  I won't get a phone call.  I don't

4    have a visit besides a grave site.  I don't have-- I can have

5    a conversation, but I won't get an answer.  His family has

6    that luxury, and we don't.  We don't.  Possibilities of

7    parole, my brother doesn't have a possibility of coming home.

8    It is not fair.

9             It is not fair, it is not fair.

10            THE COURT:  Thank you.

11            MS. MACE:  Thank you.

12            THE COURT:  All right.  Does the government have any

13   statement to make regarding the appropriateness of the

14   sentence?

15            MS. MACE:  Judge, we will rely on our papers.  I do

16   just want to note that there has been very touching, you know,

17   statements from the victim's family and I think that the

18   feeling that 25 years is not enough.  I'm sympathetic to that

19   and I know a loss is felt very deeply, and to a family, who

20   has lost someone, it seems like it is insufficient.

21            But, there are reasons I think in this case to go

22   below the guideline range, and that is why the government has

23   agreed to the agreement that we have.

24            The defendant was extremely young when he began his

25   participation in this enterprise.  That is not an excuse, but

1    it is part of the tragedy of this case, I think.

2            The crimes are truly horrible.  But he was so young

3    and I think there is the possibility that there can be

4    rehabilitation in this case.  That is our hope.

5            So we think a sentence of 300 months is appropriate

6    here.

7            THE COURT:  There is someone standing in the back, I

8    don't know is that a member of the victim's family?

9            MS. MACE:  That is the victim representative from

10   the U.S. Attorney's office.  May I speak with her for a

11   moment.

12           (Pause.)

13           MS. MACE:  I have been informed that Mr. Thomas, the

14   victim's father has requested an opportunity to say one more

15   thing to Your Honor.  I don't know what it meant, he has asked

16   for that chance.

17           THE COURT:  Yes, Mr. Thomas, come on up.

18           Yes, sir.

19           MR. THOMAS:  Thank you for hearing me again.

20           THE COURT:  Surely.

21           MR. THOMAS:  You know the worst part about this, you

22   know like, I had my youngest daughter and my grand kids

23   staying with us, okay.  A couple of days after this happened,

24   It was a threat, all right.  And we had to relocate because of

25   it.  It was like, you know, like I work, they were home.  But

1  rumor got around, if my kids or grand kids were out in the

2  courtyard, the same thing could happen to them.

3         Behind that, I had to move.  You see, young man, you

4  didn't only take my son, you took where I live.  We never

5  bothered nobody where we lived.  Everybody know me, know the

6  kids.  You devastated.  You totally messed me up.  I never get

7  over this.  I don't-- have a good one.

8         THE COURT:  I'm very sorry for your loss, sir.

9         MR. THOMAS:  Thank you for hearing me.

10        THE COURT:  That is quite all right.

11        Mr. Branden, anything else?

12        MR. BRANDEN:  Judge, I frankly don't have too much

13 to say.  It is tragic, it is.  I agree with what the

14 government has said about the victim, I agree what the

15 government has said about the victim's family.

16        Gang activity has resulted in so many losses, it is

17 not just here, but it is what the government is trying to get

18 at by bringing these prosecutions.

19        But on the other hand, 25 years is an extremely long

20 period of time to be in jail, especially for somebody who

21 never served a lengthy, I don't think an upstate term

22 previously.  Although he might have done a year, I take that

23 back.

24        I do think there is a hope for rehabilitation here.

25 He is a perfectly pleasant individual.  He has been a very

1    cooperative defendant.  He has tried to hold as many

2    codefendant meetings as possible, to get others to see the

3    light and wisdom of taking the plea.  I think others down the

4    line would credit him for that, and I think there will be

5    others down the line resolving their cases short of a trial.

6         He too has had a very difficult childhood.  He was

7    young at the time.  All those factors go into why this

8    11(c)(1)(C) plea was entered and I just don't have anything

9    more to say to that.

10         THE COURT:  Okay.

11         Mr. Elainor, is there anything you would like to say

12   before I sentence you, sir?

13         THE DEFENDANT:  Yes, Your Honor.

14         Just really truly, I would like to apologize to the

15   family, because at the end of the day, it was a senseless

16   murder.  It just -- he didn't deserve that.  Because nobody

17   deserves to lose a love one.  So I do feel their pain and

18   their suffering through what they are going through.

19         I truly do apologize.

20         THE COURT:  Very well.

21         I have considered the agreement between the

22   government and the defense.  I think it is a reasonable

23   agreement, as I have said previously.

24         I have considered the factors under 18 U.S.C.

25   Section 3553(a).  I believe the sentence that has been arrived

1    at is an appropriate one or reasonable one, not one that I

2    would necessarily impose without that understanding, but

3    nonetheless, a reasonable one.

4           And the sentence I will impose is sufficient but not

5    greater than that necessary to fulfill the purposes of

6    sentencing.

7           Let me just say that the facts surrounding the

8    defendant's activity with this gang prove beyond any doubt,

9    that once you do certain acts, you just can't put the genie

10   back in the bottle.  There is no way to undo the hurt, the

11   harm, the injury, the loss that is created by senseless

12   violence.  Whether you do it when you are 18 or whether you do

13   it when you are 62.  It has the same consequences.

14          Unfortunately, 18-year olds have this, sometimes

15   have this belief in infallibility and have no concept of the

16   consequences to others of what they do.

17          And, this is the perfect example where two children

18   have to grow up without a father, because of a senseless act

19   of violence.  And I really do sympathize with the family and

20   extend my heartfelt condolences to them.

21          This never ends.  The hurt never ends.  The loss

22   never ends.  And I think the point was well made that-- by the

23   victims that you can explain to yourself and to your children

24   that people get sick and die, but how do you explain to your

25   children that your father was the victim of a senseless murder

1   at such an early age.  It doesn't make any sense.  You can't

2   explain something that makes no sense.

3              Having said all that, are you ready to be sentenced,

4   sir?

5              THE DEFENDANT:  Yes, sir.

6              THE COURT:  All right.  On Count One of the

7   indictment, racketeering, I will sentence you to 180 months in

8   the custody of the Attorney General.

9              On Count Seven, the firearms charge, I sentence you

10  to a consecutive sentence of 120 months in the custody of the

11  Attorney General for a total of 300 months in the custody of

12  the Attorney General.

13             I also sentence you to five years of supervised

14  release with the following special conditions:

15             For a period of six months, you shall comply with

16  the curfew via electronic monitoring as directed by the U.S.

17  Probation Department, you will remain at your place of

18  residence from 7:00 p.m. to 7:00 a.m. every day.

19             Probation Department may designate another 12 hour

20  time period each day if the defendant's employment, education

21  or observance of religious services precludes the above

22  specified times.

23             The curfew via electronic monitoring shall commence

24  on the date approved by the Probation Department.  During the

25  curfew period, the defendant shall wear an electronic

1  monitoring bracelet or similar tracking device and follow all

2  requirements and procedures for the curfew by electronic

3  monitoring by the Probation Department.

4        In addition, the defendant shall pay all costs,

5  including the price of electronic monitoring equipment to the

6  degree he is reasonably able.  The defendant shall disclose

7  all financial information and documents to the Probation

8  Department to assess his ability to pay.

9        Also, the defendant shall participate in an

10  outpatient or inpatient drug treatment or detoxification

11  program approved by the Probation Department.  If the

12  Probation Department deems such treatment is necessary at the

13  time of his supervised release.

14        The defendant shall contribute to the costs of such

15  treatment, not to exceed an amount determined reasonable by

16  the Probation Department's sliding scale for substance abuse

17  treatment services, and shall cooperate in securing any

18  applicable third party payment, such as insurance or Medicaid.

19        The defendant shall disclose all financial

20  information and documents to the Probation Department to

21  assess his ability to pay.

22        The defendant shall not consume any alcohol or other

23  intoxicants during and after treatment, unless granted a

24  prescription by a licensed physician and proof of the same is

25  provided to the Probation Department.  The defendant shall

1   submit to testing during and after treatment, to ensure

2   abstinence from drugs and alcohol.

3           The defendant shall not possess a firearm,

4   ammunition or destructive device.

5           The defendant shall submit his person, property,

6   house, residence, vehicle, papers, computers, and other

7   electronic communications or data storage devices or media, or

8   office to search, conducted by the United States Probation

9   Officer.  Failure to submit to a search maybe grounds for

10  revocation of release.

11          The defendant shall warn any other occupants that

12  the premises is subject to searches pursuant to this

13  condition.

14          Any officer may conduct a search pursuant to this

15  condition, only when reasonable suspicion exist that the

16  defendant violated the conditions of his supervision and the

17  areas to be searched contained evidence of this violation.

18  Any search must be conducted at a reasonable time and in a

19  reasonable manner.

20          Finally, the defendant shall not associate in

21  person, through mail, telephone or electronic communication

22  with any individual, with any affiliation to any organized

23  crime groups, gangs or other criminal enterprise pursuant but

24  not limited to, a prohibition list provided by the U.S.

25  Probation Department.  Nor shall the defendant frequent any

1   establishment or other local identified by the United States

2   Probation Department as a location where these persons or

3   groups may meet.

4            There is a $200 special assessment which is

5   mandatory.

6            I'm not imposing a fine, as the defendant does not

7   appear to have the ability to pay a fine.

8            You have the right to appeal your sentence to the

9   United States Court of Appeals for the Second Circuit.  If you

10  believe the Court has not properly followed the law in

11  sentencing you.

12           I note that you have agreed not to appeal or

13  otherwise challenge your sentence if it is 300 months or below

14  and this sentence is 300 months.  Therefore, you have a

15  contractual agreement with the government not to appeal your

16  sentence as I have imposed it.

17           However, if you still believe that the Court has not

18  properly followed the law in sentencing you, you should

19  discuss that with your attorney.  Your time to appeal is

20  extremely limited, so, you should have that discussion at

21  once.

22           Do you understand your right to appeal?

23           THE DEFENDANT:  Yes, sir.

24           THE COURT:  Okay.

25           Are there open counts?

1    MS. MACE:  Yes, there are and the government moves
2  to dismiss the open counts.
3          THE COURT:  And the underlying indictment?
4          MS. MACE:  And the underlying indictments.
5          THE COURT:  The motion is granted.
6          Anything else from the government for today?
7          MS. MACE:  No thank you.
8          THE COURT:  Anything else from you, Mr. Branden?
9          MR. BRANDEN:  Yes, three things.
10          I think that the probation report indicated properly
11  that Mr. Elainor has a pretty profound drug history.  I think
12  he would benefit from a drug program while incarcerated, if
13  Your Honor would order that.
14          THE COURT:  Would that have any effect on the length
15  of the sentence?
16          MS. MACE:  Judge, I don't know the answer to that,
17  I'm sorry.
18          MR. BRANDEN:  I don't know the answer to that.  I
19  think he needs it.  I think he would benefit from it.
20          THE COURT:  Well, if it were to have an effect on
21  the length of the sentence, I'm not going to recommend it.
22  But, to the extent that it would not have an effect on the
23  length of the sentence, I would recommend it.
24          But my point is, that I think that 25 years is a
25  reasonable sentence, and I don't want to give the impression

1    that I have any-- that I encourage the defendant's sentence to

2    be truncated by virtue of being involved in the drug program.

3          MR. BRANDEN:  It is not like I'm just bringing it

4    up, it is in the Probation report itself.

5          THE COURT:  I understand that.  I am not faulting

6    you in any way, shape or form.

7          MR. BRANDEN:  I'm not trying to angle to get a

8    lesser term for him.

9          THE COURT:  I understand that.  But, I'm going to

10   make it very clear that he can apply for the drug program

11   but-- the Bureau of Prisons is at liberty to do whatever it

12   normally does.  But, to the extent that the drug program would

13   result in a diminished sentence, I am opposed to it.  So I

14   make that very clear to everybody.

15         I think the defendant should serve his entire

16   sentence.  It is an agreed to sentence.  I might have

17   sentenced him to a longer sentence if you hadn't agreed to the

18   terms of this.  I could sentence him for up to life.  Although

19   I don't think I would do that generally speaking in a

20   situation like this.  I don't want to give the impression to

21   the Bureau of Prisons that I support a reduction in the

22   sentence based on some courses that he takes in the prison

23   system.

24         Anything else?

25         MR. BRANDEN:  Yes.

1      Secondly and I don't know if this is necessary, but

2  it appears that it might be from the Probation report, Your

3  Honor should order, I am asking for this, concurrent

4  sentencing with his undischarged State term of five years.

5  The State Court is well aware of all the facts in this case

6  and already ordered its sentence to run concurrent to this

7  one.

8      But because of what's stated in the Probation

9  report, I think it is important for Your Honor to indicate

10 that it be run concurrently and not to leave it unsaid.

11     THE COURT:  Does the government have a position?

12     You don't have to have to a position.

13     MS. MACE:  May I have a moment?

14     THE COURT:  Sure, you can have all the time you

15 want.

16     (Pause.)

17     MR. BRANDEN:  They didn't in their addendum give the

18 Court such a reason.

19     MS. MACE:  Your Honor, I'm not aware of any reason

20 either, but I take no position on that.

21     THE COURT:  Based on the representation that the

22 State Court has indicated that the State sentence should run

23 concurrent with the Federal sentence, the Court agrees to

24 honor the State Court's decision, that the State sentence--

25 that the Federal Sentence run concurrent with the State

1 Sentence.

2        MR. BRANDEN:  Thank you.

3        THE COURT:  Based on that, we will put that in the

4 judgment as well.

5        MR. BRANDEN:  Then finally.

6        THE COURT:  Number three.

7        MR. BRANDEN:  Finally, the defendant has some family

8 members here also.  He would like to be as close to New York

9 City as possible.  They are not rich people.  It is difficult

10 for them to make a big trip to see him.

11        A recommendation that he be imprisoned as close to

12 New York City as possible would be helpful.

13        THE COURT:  I think that-- let me explain why I'm

14 going to recommend this, although I cannot require it.

15        That is, that if this defendant is to have any hope

16 of resuming a law abiding life when he leaves prison, which

17 will be a long time from now.  It really is necessary for his

18 family to be supportive of him and in contact with him.

19        The mistakes that the defendant made were at a very

20 early age, and as serious as they are, the last thing that

21 this Court wants is for him to resume such behavior when he is

22 released from prison.

23        So, on that basis, I place a burden on the

24 defendant's family to be supportive of him, to assist him, and

25 to help to provide him with the kind of guidance that he will

1    need in the years ahead, to avoid problems in prison and to

2    avoid problems after prison.

3            So, I recommend to the Bureau of Prisons, though I

4    cannot require, that the defendant be designated to an

5    appropriate facility in the New York metropolitan area.

6            Anything further from the defense?

7            MR. BRANDEN:  No, Judge.

8            THE COURT:  Anything further from the government?

9            MS. MACE:  No, thank you, Your Honor.

10            THE COURT:  All right.  Thank you everyone.

11            Thank you Marshals.

12            THE DEFENDANT:  Thank you, Judge.

13            (Matter concluded.)

14

15            - - o o 0 o o - -

16

17   I CERTIFY that the foregoing
     is a correct transcript from
18   the record of proceedings
     in the above entitled matter.
19
     s/Richard W. Barry
20   _____
     Richard W. Barry, RPR
21

22

23

24

25